Good morning, Your Honors, and may it please the Court, Beth Gunn on behalf of Ryan Himes as the representative of the State of California pursuant to the Private Attorneys General Act, and on behalf of objecting class members Trent Andrews, Cynthia Cardenas, Victoria Cosio, and Elizabeth Garcia. I'd like to reserve four minutes for rebuttal, and I will attempt to watch the clock. The first point I'd like to make is that reversal in this case is proper on the basis of the one central issue that has just been discussed here. The fact that the settlement seeks to release PAGA claims that plaintiffs had no authority to settle because they had not complied with PAGA's statutory pre-filing notice requirements that were required to pursue those claims. We're asking this Court to adopt a bright-line rule that it is an abuse of discretion for a district court to approve unauthorized PAGA settlements like this one. This is what the California Supreme, or the California Appellate Court did in the Uribe case. In Uribe... Uribe's facts were much different, right? So, how do you go to this point where, for me, this is the rough, you want a bright-line rule, but under Mooney's, for example, if we were to go with this claim preclusion line of reasoning that the district court endorsed, or at least predicted, maybe, then there's going to be a question, really, about the extent to which the claims really do arise out of the specifics that were included in the notice. So, how do we get to a bright-line rule? Why would we be the ones reaching that rule as opposed to the California Supreme Court? So, I think the California Supreme Court has actually already created this bright-line rule. It has stated, going as far back as Arias, that unless a party complies with the notice provisions, it cannot proceed with that claim. That's why you don't need it from us. That's what I keep saying. We've already got that, but then the devil's in the details, right, about the extent to which the claim was really fairly read into that notice. That's what we're trying to grapple with. Correct. And I think our position has been from the very beginning that the HIAMS-only claims are distinct, different kinds of claims. They are claims that were not noticed. Those labor code provisions were not included. They are different kinds of claims than the kinds of claims that were brought in the Caprera case or the Chelian case. Are they different or just a subset? They are different. They are entirely different. They are not a subset. We have argued extensively. They do not fall under the claim preclusion analysis. They do not arise from the same nucleus of operative fact. They are entirely different. The maximum pharmacy hours of work claim, those are about whether they're stand-alone claims, first of all, for which there's no individual private right of action. So there's no individual claim that can be brought on to seek relief for those claims. They are meant to prohibit exceeding certain hours of work in the workplace. And they have nothing to do with whether or not somebody was paid overtime, whether or not somebody worked off the clock. It has to do with on-the-clock work. And the measure of damages would be to look at the on-the-clock time records, which no one in this case ever looked at. There were no facts alleged in the pocket letters about any of this. In fact, their claims were all about off-the-clock work and reasons why people didn't take their rest breaks and meal breaks and things like that. It had nothing to do with these very strict hours that are supposed to be enforced. I think I must have misunderstood something about the exclusivity of pocket claims. If there's a state law that says you can't cause people to work more than a certain number of hours and an employer requires them to work more than the permitted hours, there's no private right of action. It can only be done through a pocket claim. So in this particular case, this is, I'm talking about Labor Code Sections 850 and 851. They regulate the hours that people who sell at retail drugs and medicine are allowed to work. And I thought if somebody worked too many hours, that the person who worked too many hours would be entitled to bring just a solo claim to get paid for those hours, but he can't, huh? If he didn't get paid for those hours, that's a different claim than if he worked those hours and got paid for them, but they were in excess of what the state said were appropriate hours. Now I understand. That's the distinction that other deals give for. So it's our position that those claims are distinct claims. They have nothing to do with any of the facts or the theories or the Labor Code provisions that were identified in the settling party's original pocket letters. So those claims, you know, there's no greater right of a state proxy than to resolve claims. District courts, right, also have an imperative to try to get litigation concluded, as you appreciate. And I think this has been ongoing for something, this Chalian, what I'll call the Chalian Convert, has been ongoing for something like four years. Did the district court have the option, given their settlement agreement, to sever the three claims that you're talking about? The district court did not have the option to approve the settlement and sever those claims, but the district court did have the option at preliminary approval, and we specifically requested this at the preliminary approval hearing. The district court had the option to say, I will not approve a settlement that overreaches in this manner, that includes these claims. Does that mean, maybe my question wasn't helpful, but I'm not sure what is different from what you're saying and what I've asked, so I probably didn't do a good job. Did the district court have the ability, given this settlement agreement, to say that I won't approve unless or until those are severed? The district court did have the ability to say that, yes. The district court could have said, and we actually requested this, and the district court did not grant us that relief. But we said, look, we don't need to be talking about a lot of these things if the district court severs these claims, because the POGMA-only claims, the HIAMS-only claims, they're the problem here. That's the big overreach. Those are the things that were never part of these cases. But when you say that, you mean the three, not the 13? I mean the three, yes. There were other claims that do overlap. They were different, and those are not the primary basis that we think. Okay. So there were 10 POGMA claims that were overlapping from the start, and then three that were added at the end. That's what we're fighting over? It was actually five claims, but it's three types of claims. So the HIAMS-only claims, there were five claims that were added, and they fall into three different categories. The pharmacy maximum hours of work, the day of rest, and the... Okay. I mean, was that helpful to just answer Judge Vomittee's question, which I think would be helpful to all of us, if you could? So if I'm understanding your question properly, I believe there were overlapping claims that we knew that were overlapping that were exhausted. How many were there? Does 10 sound right? It sounds a little high, but it could be 10. It was at least five. Okay. I can get it for you. So there were at least five overlapping claims, and then these additional five claims were added, but... Added. Finish. They were added at the time of the settlement. They were added as a function of settlement. As a complaint. Correct. Yes. Thank you. In July. So I guess the answer is if they didn't add those three claims, then you would have no argument about tightening this or anything like that because complete overlap. They have a right to settle the PACA claims. I think that's correct. The trigger event was the addition of those claims. Typically, if we were going to have a timely analysis, I would expect the district court to talk about the reason and length of the delay, and I didn't see that. There was no timeliness analysis in the intervention motion. Different question. Did he analyze the reason and length of the delay, which is a component of the timeliness analysis? I don't see it. In the intervention decision, the court did not analyze that. Go ahead. I'm sorry for this constant overlap. These cases inevitably... I understand, and I was at the trial court level, so I can perhaps fill in the blanks here. And I would also like to note, in response to the court's earlier inquiry, regarding the hearing in March. That was a hearing in which, as counsel in the Hyams case, discover requests had been made, and we fought and fought and fought. We finally got it teed up to a magistrate. If you're going over this quickly, but in my notes, this was interesting to me because there's a representation in the course of this advocacy that nobody had reached out. But my understanding is that the reason for that conversation at the December, I think, 18th hearing is that there's an outstanding discovery request from Hyams counsel to CBS. I don't know which CBS. That's correct. I lost track of them. Asking specifically, is there a settlement for it out there that would impact our claims? That's correct. When was that discovery? Here's what I don't know. When was that discovery promulgated? It was propounded more than a year earlier. It was propounded, we fought, we met and conferred, we went back and forth over what we... You answered my question a year earlier. Yes. I'm proposing counsel have an opportunity to respond to that if they want to. Yes. And also, CBS was obligated to file a notice of related cases in these matters and did not. And we always interpreted the fact that CBS did not alert the parties in the Julian or the Cabrera cases as evidence of the fact that it intended to engineer a reverse auction. Could you get back to the settlement? Yes. And Moniz. I think Moniz didn't exist yet at the time of this district court. That's correct. But you seem to have predicted it accurately. In what ways does this opinion differ? This ruling, in your case, differ from Moniz? Well, in our case, it's different from Moniz in that we're talking a lot about the HIAMS-only claims. So there is no overlap of the claims. So that's one difference. And in Moniz, it recognizes the right of a state proxy to interfere in another case because of the state's interest. And it's been our position all along that the district court was supposed to look at the deterrent effect of a pocket settlement. And pocket is different than class settlements in that way. There's a different standard that should have been employed. What's your position on whether we should wait for a torietta? I agree with what my co-counsel, Ms. Burling, said in that torietta could easily contain some guidance for this court that would be useful. But I do not think that it addresses the core thing that is different about this case. But the court has a sentenced torietta, so I appreciate that. Yeah. I agree with what she has already stated about that. Is it the case that the settlement gives only $75,000 to the pocket claim? That's correct. Yeah, that's correct. And that's something that I wanted to discuss. There's 25,000 approximately aggrieved employees. That comes out to less than $0.76 per aggrieved employee. And it's less than $0.03 per pay period that is at issue. These are for claims that counsel in the Chalina-Cabrera cases did not investigate, did not know what they did not evaluate. Why does that matter? That's not the nature of a pocket claim. It's not to recompense. It's a deterrent. Right. It's a deterrent effect. Right. And if CBS is selling out a claim that in the Hyams case is pending for tens of millions of dollars and getting a settlement for $75,000, that to me sounds like a reverse auction. But counsel, I don't think you're really getting to Judge Momotay's point. You've done this sort of per person, per capita analysis, and it's not a damages. Right. It's a penalty. Yes. It's not disputed. It's a penalty component. That's correct. It's for civil penalties. And I think the point is that it doesn't create a deterrent effect for CBS to wrap in, to sell it so cheaply. It's not to deter. It does not. It's too small to deter. Well, then that's because it's $75,000, not because of the per person. But fine. I think you've answered that question. Okay. I think we're missing something. No. I mean, I think my point is there's pennies on the dollar. CBS is a huge corporation with billions and billions of revenue and profits every year, and pennies on the dollar for pay periods. I mean, our argument has always been CBS doesn't want to comply with the labor code. It instead pays counsel after the fact, and that's its compliance mechanism. This is, I mean, we had class members who submitted declarations to this effect. CBS does this over and over again. We get a small check, and then nothing changes. And then a couple years later, we get another small check. There has been no deterrent effect. We made that argument, and the district court ignored it. We understand now. I think we're just being too literal. We get it. Okay. Okay. So can you address the Callahan question with why are you even allowed to be here? So I think you're talking about the question of standing. Right. Appellate standing. Right. So I believe that we have appellate standing because this falls under the Exceptional Circumstances Doctrine. And we argued it in our briefs. But the law in this circuit is that non-parties do have appellate standing under certain circumstances. And then exceptional circumstances apply when a party has participated in the lower court proceedings and when the judgment at issue intends to bind them. And there's no doubt that those two factors exist here. And we believe that that provides us with the standing that we're required as a non-party. What was the participation below? What was your participation below? We participated heavily by objecting to the settlement. And there have been several courts that have said that that type of objection is the type of participation in the lower court that would enable one to seek standing under the Exceptional Circumstances Doctrine under Callahan. That is not what Callahan was about. Callahan did not at all, there was no issue in Callahan as to whether or not the Exceptional Circumstances Doctrine applied. There's no analysis of that. The parties did not argue it. It was not part of the Callahan case. So you're asking us to... We're asking you to go beyond Callahan. Callahan is a ruling in one aspect, but then there's another Doctrine of Exceptional Circumstances. Can you cite me a case that shows that if you object below to the settlement, that's enough to get the Exceptional Circumstances? The case that we cite in our brief, there are several of them. One of them was Buffen. Let me see. Buffen was one of the main cases. There is also the... Excuse me, I'm sorry. In realliance data for Nan Marcus, human rights litigation and Commodity Futures Trading Commission v. Topworth, those are all cases in which a non-party was deemed to have standing under the Exceptional Circumstances Doctrine, and specifically when they formally objected to the court's order and participated in the hearing. Did you want to save time? I did. Thank you. Sorry. In the previous case, if we were to find that the district court erred by rejecting the mandatory intervention, what should we do with your case? There are several options, I think. One thing is to say that you could also rule on the issues in our case if you want to reverse it, and if you want to say that the settlement was unfair or inadequate, which is one of the things that we've argued. In addition to that, we could just go back as an intervener, and then we would have the right to be involved in the case and to settle the case and settle the claims that we should have been involved in from the very beginning. Wouldn't that be preferable than filing as a non-party objector, right, as an intervener? Yeah, we believe as an intervener we would have the right to be involved in the settlement of those claims, and that's what we wanted all along. Those were the HIAMS-only claims. Only HIAMS should be the one to settle them. It shouldn't be anybody else. Thank you. Thank you. Let me briefly address the appellate standing issue. There are no exceptional circumstances here. As this Court has recognized for Volkoff v. Jantz and formal Zutica, exceptional circumstances usually means a party is hailed into a case against their will and has an adverse judgment entered against them. In this case, why isn't this just that? I mean, HIAMS is being brought in against its will, and he objects to what amounts to a judgment against them because it sets up race judicata against him. So because the LWDA was given notice of this and didn't respond, if the LWDA below had objected to the settlement, I would agree that's exceptional circumstances. In that case, it's like one of the cases cited, which is. . . ... A little bit more nuanced. What I'm saying is, for the exceptional circumstances to truly mean exceptional circumstances, the State of California itself, who gets notice of the settlement, should be the one to say, I think it's unfair. We don't have the personnel for this. We just form it out to private attorneys general. That's what TAGA means. And those private attorneys general are acting as representatives of the state in this. If every time one private attorney general believes another is acting inadequately, and that creates a public standing, then it would swallow the rule of exceptional. And I would at least note that there are several cases out there recently where the LWDA has done this. ... Well, we believe that we did provide that notice. We certainly provided settlement. We provided the Second Amendment Consolidated Complaint. They also had our original PAGI notices. They had everything at the time of settlement if they wanted to object. There's all the information they needed to see whether or not this was a fair and reasonable settlement. And I guess what I'm stressing is in cases like, and there was a recent case, Acevedo versus Cash Call, and we're going to provide a Rule 28JA letter on that very soon, in which the LWDA... We know that they were not at the table when the settlement was negotiated. And your claim is, yeah, we didn't give them notice, but they knew all about it. There doesn't seem to be any evidence that if they'd said, yeah, we want to be at the table, they would have been allowed to be. I mean, for all we know, the whole thing would have taken place behind their back, even if they were knocking on the door of the conference room. So I just dispute that we were trying to use behind their back, because, again, when you send them a settlement agreement, you send them a Second Amendment Consolidated Complaint, which we didn't even have to do. The statute only requires the original. This is a tough argument. Sure. We just have gone over the little points in the timeline in detail, and there's a really long delay there, it seems to me, where they didn't have notice. And besides, it is what it is. Do you have a different bullet point in the timeline that I need? Yeah, well, the final approval hearing was in December of 2020. They had six months before the settlement agreement and the Second Amendment Consolidated Complaint. And when did they intervene? Oh, I'm talking about the LWDA. I wasn't talking. I'm sorry. Oh, okay, but that's why I'm saying it's a tough argument for you, for the reasons that Judge Kleinfeld is mentioning, right? There's a statutory scheme whereby we're attaining California courts. Whoever gets, I'll say deputized, is the one representing the state's interests. And now you seem to be saying that in spite of that, that you would expect that the client, in this case the state, would be obligated to be the one to object. The whole purpose of providing the settlements to the LWDA directly is so the LWDA itself, not the co-plaintiffs, there's actually no requirements for us to set a settlement agreement to Himes Council even if we knew about them. Okay, but you're getting to Judge Kleinfeld's question now, which is, you know, the whole premise of the PAGA statute is that it's an overworked agency. The legislature said they're not going to be able to do what we want to deputize and incentivize, and so what about that? That's his question. I understand, and there's many courts that have used against, have decided these issues based on the fact that the LWDA has not responded. Well, that might be the practical reality. The purpose of the statutory scheme is you provide a settlement agreement, and the idea is the LWDA is the one to protect the interests by reviewing it. Whether or not they're adequately staffed or not is a state issue, and I believe they should be staffed more. But in terms of the consequences of that. Private attorneys general. Yes, but with the settlement. Private attorneys general, if the letter is sent to the client instead of the client's lawyer, that's not adequate notice when the client is represented by counsel. But the settlement agreements, the statute only requires to be sent to the LWDA and the court. That is the difference. If the statute had required that we send it to anyone with an overlapping case, then I would agree with your argument. But the statute as written, and we can only go with as written, doesn't require that. It's LWD that can't intervene as a right under the statute anyway, right? I'm not sure about that because, for instance, in Acevedo v. Cash Call, the court invited them to participate in the DSLE on behalf of the LWDA, submitted a brief, and objected to the settlement. We have a number of cases where the LWDA has either below objected to the settlement by writing in. Whether that's intervention or not, I don't know. That's what I was just going to say. I get to Judge Bowman's point. I see them sort of popping up. Right? Or objecting perhaps. I think the question went to intervention. So Acevedo uses the term intervention to describe that process, and it is unclear to me under the statute whether or not they can intervene. Whatever it is, they're allowed to object, right? They're allowed to say, we think this is an unfair settlement. If it goes on up hill, right, they can submit an amicus brief, and they may even have more appellate rights under the theory that I'm trying to outline, which is if the state of California, after receiving the settlement, had objected to the settlement, I think that would be an exceptional circumstance. But to have every single pago plaintiff who believes another settlement is fair to have appellate standing, would just defeat the rule of exceptional circumstance. It happens all the time. We never agree amongst plaintiff lawyers about what a good settlement is or what isn't. We have different views, different experiences, and the person who's always shut out of the settlement has hard feelings. And we didn't want to shut anyone out of the settlement. That's why I joined forces with Mr. Clark's firm, and if I knew about their case and they had hit the phone, I would have joined forces with them. So I guess that's conceptually the case that pago plaintiffs can have overlapping claims all the time. Correct. They send the same notice to the LWD saying the same facts, say the same labor code, and anyone can settle those. That is correct. And that's why it's incumbent upon the plaintiff's counsel to get together earlier and work together. And that's what we wanted to do in this case, and we were deprived of that opportunity. If anyone created a reverse auction situation, it was these individuals who thought somehow they were going to be able to litigate and settle their case around us. Well, wait a minute. Did you hear that? Opposing counsel just indicated, and I'm for whoever is the right lawyer to respond to this question, that there was an outstanding discovery request for more than a year asking CBS, admittedly asking CBS, is there any settlement afoot? So when you say they're trying to settle off from under you, that's a reach, counsel. I mean it in a different way, which is if you don't join forces early, right, if you think that you're the first filed case for 10 of the 13 pago claims, what is going to happen at some point is the defendant is going to approach the first filed case to settle, right? And I can't account for another case I don't know about. Opposing counsel's declaration indicates that it was CBS that insisted upon adding these three clients. I have no idea if that's correct, but you can understand why this would be of considerable concern. Because it threatens to undermine the whole incentive system that the legislature established, right, for these kinds of claims. When you talk about those claims, we actually did an analysis of those claims. I'm missing something on the point I just made. You seem to be pivoting away from it quickly, but if I might add something. I didn't mean to pivot away from that. No, I understand that CBS is the one that asked for it. The reason they asked for it is because they had a theory, and it turned out to be correct, that if you force someone to work off the clock, as we allege, or if you allege, like, inadequate staffing in these issues, that those people might work beyond the statutory farm as its maximum hours. And our expert looked at that issue, and he said, yes, when people work off the clock, they're going beyond the nine hours that the legislature prescribes. You seem to be dropping down to the merits of the claim. No. All I'm trying to say is because they arise from the same operative facts as the underlying claims, I think it's fair game to settle them. And what I'm trying to also say is that the terms of notice to them, sure, they weren't specifically in there, but a lot of other claims were, and on the factual predicate as is, a settlement could have been reached to breach all claims that arise out of the same facts, the res judicata. Well, that's where I keep coming back to what I call the target. The devil's in the details about what's going to have been fairly encompassed by the notice. But can I just ask you, Julie, do you agree that what's your position on Terrietta, that we should wait? Is it going to help at all? I don't think Terrietta is going to assist here. I don't think that we need to wait. I think these issues can be decided. For instance, the factual predicate rule is an issue of federal law. It's flexibility provided to you. We're trying to give it the nature of the right, and the question is whether Terrietta would tell us anything or provide us any clues. Let me ask you a different question. Sure. Because I think you fairly answered that, which is we don't know what the California Supreme Court is going to do, and it's going to do whatever it's going to do. But it's fully breached, right? That's my understanding. Yeah, that's my understanding, too. What do you think about opposing counsel's statement that the district court, in this case, would have had the ability to insist upon severance of those three claims before approving the settlement? Was that an option in this particular settlement agreement? I don't think so. Severance provision? There's no severance provision that I'm aware of, but I'm also not aware of any authority laws that district courts rewrite. A settlement is usually a thumbs-up or thumbs-down, right? And so the court did, though, at least – I mean, what I'm posturing is there was a settlement agreement. The district court was very well aware of the allegation that the three claims had been added without having been properly noticed. It's not a trick question. I'm just wondering if there's anything in the settlement agreement that would have prevented severance, because I'm trying to get at workable rules going forward. I'm not sure if there's anything in the settlement agreement that would have done it, but the court can always say, I may not approve this if you have those claims. Right. And we don't deny that power. Well, let me ask you about this notice, to get back to notice for a moment. Your argument is they could have shown up earlier because they knew that the settlement discussions were going on. And the first thought that occurs to me is suppose somebody knew that a particular couple was getting married. That doesn't mean they can show up and get dinner at the wedding dinner. They have to get an invitation for that. What I'm thinking is they might know that settlement discussions are going on. I don't know how they're going to know when the people who are discussing, basically CVS trying to bar as many claims as possible and seeing what it takes to pay the lawyers to agree to that, the lawyers for the plaintiffs. I don't know if they would have known or whether they would have been told when the discussions were taking place. I don't know if they'd be allowed into the conference room or lawyer's office where the discussions were taking place. I don't know if they'd be allowed to be heard. So it seems to me like attributing knowledge to them that settlement discussions are going on just isn't worth much. They've got to get invited to participate for it to be worth anything. And it could easily be the case that no, you guys would upset the whole apple cart. You can't participate. So to address that, my argument's a little bit different. I never said just knowledge of settlement discussions. It's actually broader. When you know that another case has a substantial overlap with your case, as recognized by this court in Air California in Smith v. March, don't wait. Because we may settle the case, and if we settle the case, even without those three claims, we're still selling 95% of their cases. Don't wait. A closing counsel says there was outstanding discovery requested a year earlier. Don't wait. Just walk me through. Were they supposed to do, right? Sure. So at the time, the notice of related case was filed. That disclosed our case. At that point, they looked up what our case was about and saw that there was substantial overlap between Cabrera and our case. Was the notice of related case filed in Himes? It was in Himes' case. We filed a notice of that. At that point, is it correct? You said that there was ten of ten claims that overlapped at that point. Correct. Cabrera case has always been a very broad action that substantially overlaps with at least the pharmacy part of their case. And they, instead of reaching out, argued it's not a related case. Well, things always change, especially in a pre-certification settlement. At the beginning of the case, the defendant in a possible class action might want the class to be as narrow as possible to keep the dollars down. But once it looks like they're working at a settlement, it's in the defendant's interest to have the class embrace the whole world so that everybody's barred by race judicata. And to address that exact concern, because I don't want to have the broadest thing possible. When we did the Second Amendment Consolidated Complaint, all we did was take Chaly and Cabrera and put it into one. We didn't add a single thing other than those claims, which we made clear arose out of the same fact. And it was precisely to address that issue. You didn't add a single thing? Other than the claim, factually. Other than the three claims? Right, right. That's her whole point. Right, but again, on the factual predicate, we wanted to make clear that these claims arise from the same factual predicate. We're doing it consistent with race judicata. The factual predicate is just a question. Again, it goes back to it's a spectrum. At what level are we talking about? At what level of generality? All people who worked at CVS between date X and date Y? Surely not. The question is drill down, drill down, drill down. And did it include? She's gone into some detail about the extent to which the preexisting authority requires the claim to be, you know, properly labeled. Right. And again, we've looked into in people who work off the clock and see to the facts, the pharmacy maximum hours. And we provided that analysis to the district court below. And that was to show that we weren't adding any facts. We weren't changing the factual predicate. Yeah. Just the bottom line, they should have, in your arguments, they should have intervened when they found out in January of 2019. Correct. With the substantial overlap, they should have made attempts to intervene at that point. What about the fact that it was dismissed at that point? The pilot claims were dismissed at that point. Still, the Chalian case had the class action overlap part. Right. That still existed. The Cabrera class claims still existed at that point. The facts are the same. What we're talking about, say, we're talking about pharmacists working off the clock, not getting meal and rest periods. Those are indicions of things that say, hey, this case is like mine. Let me reach out to them and work with them. And that's on to Mr. Padron. Try again. It can be very brief. Well, it's not a trick clock. That's the amount of time left to meal to wait. So, to be clear. All right. First, the Cabrera claims weren't dismissed. They were on appeal. The Paga claims were on appeal. And summary judgment would be granted. We get the verb. Right. I'll write it again. I just want to make sure that's clear. They were out there with the kidney rinds hanging in the shadow. But it seems that there is an effort here to make this appeal or appeals something bigger than it is. These are not the appropriate vehicles, I think, to be addressing these incredible questions of Paga and all this kind of thing. There's far more simpler rational ways. The first appeal is a Rule 24A appeal. There's a Rule 24A, four factors. The district court found intervention was improper based on precedent. Since the district court's ruling, it's been approved by this court. That rationale. Secondly, taking apart the Harvey B. Morgan Stanley case that said no substance of interest in Paga claims, you can't intervene. The third prong of intervention is of right. Cecilio or, excuse me, Callahan addresses that. But you keep mentioning cases that have been either on one or the other side of the split or that there have been other cases that suggest that those principles have been eroded. And you know that, so I don't want to use up all two minutes of your time. But surely you're aware of that. But that's not the issue here. The issue is the interest. And the reality is everyone is conflating the right to litigate a Paga claim with the right to settle one. And the Acevedo case that just came down basically said in that case that these are not jurisdictional prerequisites. They're procedural prerequisites. Which then obviously means defendants can waive them. They can do what they want. And the bottom line is there's a litany of cases in which Paga claims have been roped in or other claims that have been roped in without exhaustion that have been part of settlements. And so then we get to this Rule 23 settlement. They appeal the Paga portion of it. But Cecilio, in fact, forecloses that appeal. They don't have the ability to appeal it unless you create an exception that permits non-parties to appeal. And there's absolutely no basis for that exception. Exceptional circumstances. Exceptional circumstances. But the sheer number of these cases would probably warrant a finding that it's clearly about exceptional circumstances. I mean, in the last year alone there's been four or five of these opinions. It's going to open floodgates to Paga appeals. You know, you think you've got a lot of them now? You've got this one. There's going to be 50 more tomorrow. You know, and so ultimately, because I believe this seems inherently exceptional for a party that can't bring a claim to settle and exclude from participation a party, the only party that can bring a claim. But the statutory scheme actually provides for that. Paga has no notice requirement whether to claim it or anything. It has it to the LWD. Nobody has to inform anyone of a settlement under Paga. But we don't need to wait for Turrieta? Excuse me? Is there a position that we should not wait for Turrieta? We should not wait for Turrieta simply because I think that the issues involved here, Rule 24a, federal rule, and these are all rules of federal tax action. Well, they're not on the nature of the right. That's pretty well decided now. Turrieta could certainly change that. But there's a bevy of very recent precedent in both the lower courts and this court that show no signs or a need to wait. But what nobody's actually noticed in this appeal is turned to is the actual fairness of the settlement and the job that the district court did to assure that it was fair and reasonable. It created the process that he went through to both comply with the law and issue rulings, and at the same time, you're talking about the merits now. We're talking about the merits, yes. The merits of the actual, which this appeal is actually about. If we get to the merits, $300 per class member, less than 5% of what the parties, the settling parties own expert value of the claims at. It strikes me there are questions to be raised, $75,000 on the part of the parties. I think the thing in this appeal that's most striking from reading the fairness aspects of the brief and all that kind of stuff is the opening brief in this appeal, which never mentions probably the most salient fact to the value of the claims, and that is that 98% of the people are subject to arbitration agreements. You know, I never understood that point in the brief. I suppose all of us in practice had arbitrations, and typically the plaintiffs or claimants get some money in arbitration, often more than is predicted for litigation because the arbitrators are more sophisticated and can sometimes see past problems a jury would have. It seems like you're saying all claims to be arbitrated should be valued at zero, and I just don't understand why. I don't think that that's what it is. It is that the idea that you're going to have the agglomeration of 24,000 claims in arbitration is not going to happen. That might happen. I mean, that typically happens when you have a whole lot of possible claimants and you don't have a class action is three or four or a half dozen get litigated, and then the rest settle along the lines that the litigation came out at. That's typical. I mean, with products defects litigation, it happens all the time. And that requires industrious lawyers to sign up claimants that are truly interested in the action enough to bring the individual claim, which happens all the time. I wouldn't say it happens all the time. Could you back up, please? Again, I just want to take us back to what this appeal is about and the fact that Cecilio forecloses any attack on the pocket case in the Rule 23 component. I guess we'll discuss a little bit more in the next one, but I think the record reflects an incredibly industrious approach to approving and evaluating the settlement that certainly does not manifest any abuse of discretion. Thank you. Thank you. I would like to address some of the things that have been stated by the other counsel in this case. Number one, to get back to the point about the LWDA having the right to involve itself but the proxy not having the right to involve itself on behalf of the state, we did cite in our papers a reference to the evidence where the LWDA specifically sent an email to counsel in this case saying, we expect you as our proxy to be the ones who would object to the settlement or intervene on our behalf. We do not have the resources to do it. They referred us to the budget resolution. So I want to call the court's attention to that. I also would like to call the court's attention to the fact that the case of Magadia in this circuit says that it is a complete assignment to the proxy, and therefore that addresses Mr. Morrison's point that the LWDA somehow retains some sort of ability to intervene. It was, according to this circuit, the law in this circuit, it's a complete assignment once there is a proxy. I'd also like to call the court's attention to the Howitson case, which we have cited in our papers. What's Howitson? It goes through a claim preclusion analysis. It's a state court case, and it talks about, I mean, first and foremost, I want to call the court's attention to the fact that this idea of an identical factual predicate, that's something that arises in the context of class actions. It is not something that is appropriate in the PAGA context. In the PAGA context, it is important to have the prefiling notice. That is very clear in the California law. That's sort of an outcome of what I was saying. This district court judge didn't have the benefit of Looney's, right? That's why his order says it therefore follows that. He was trying to sort of predict how this was going to go. But I think your point is well taken. Okay. So anyway, about the identical factual predicates, I'd like to call the court's attention to the pocket letters that were submitted. There are 21 ER 4569 to 4574. The court can look at those and determine whether there's anything in there that is a fact or a theory that is related to the HIAMS-only claims. We think that it's pretty clear from the letters that it's not. The idea of claim preclusion, it does not apply to matters that could not have been raised or litigated in an earlier action. Here, it's our theory that because they weren't noticed, they couldn't be litigated, and therefore they're not subject to the claim preclusion doctrine. In addition, in this circuit, the primary rights doctrine distinguishes between wage claims and non-wage claims, and it says they arise from the different primary rights. We have argued in our papers, and we argue here, that the claims that may have been overlapping in the pocket claims, in the pocket notices, those were wage claims. The HIAMS-only claims are non-wage claims. They do not involve the same primary right for the reasons I've already given the court. And the citation for that is Magana v. Zara, USA, Inc. The Howitton case goes through the claim preclusion analysis in the context of whether an individual or the state in a pocket case have the same primary right. And it says the state's primary right is different from an individual's primary right. What we're saying in this case is that HIAMS is the only one who has the state's right, and therefore his primary right as the proxy of the state is totally different than any other right that could be asserted by anybody who was not a proxy. And I would also just like to correct a few things that I think were misstatements about the. . . Out of time, so you're going to have to wrap up. Okay. I want to make the point that in the notice of related cases, we argued in the HIAMS case that our case was different because our case had these HIAMS-only labor code claims that were pocket claims. That was the purpose of saying that the cases were different. And when they became conflated, that was the problem. This is not about hard feelings. We have a lot of class members who have said to us, this is not fair. This doesn't serve our purposes. And we're trying to stand up on their behalf and on behalf of the state. Thank you. Thank you all for your argument. Would you like to take a quick break? Whatever you like. Okay. We'll go on to the next case on the calendar then.
judges: KLEINFELD, CHRISTEN, BUMATAY